**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-cv-00494-FDW-SCR**

| | |
|---|---|
| **EPS – EHRHARDT + PARTNER SOLUTIONS INC.**<br><br>            **Plaintiff,**<br><br>      **v.**<br><br>**HONEYWELL INTERNATIONAL INC., VOCOLLECT, INC., HAND HELD PRODUCTS, INC., AND INTELLIGRATED HEADQUARTERS LLC**<br><br>            **Defendants.** | **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff EPS – Ehrhardt + Partner Solutions, Inc. ("EPS" or "Plaintiff") brings this First Amended Complaint against Defendants Honeywell International Inc., Vocollect, Inc., Hand Held Products, Inc., and Intelligrated Headquarters LLC (collectively, "Honeywell" or "Defendants"), and alleges as follows:

**NATURE OF THE CASE**

1. This is an action for a Declaratory Judgment and other relief brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiff seeks a declaratory judgment that Plaintiff has not violated any patent rights purportedly owned by Defendants.

## PARTIES

2. EPS – Ehrhardt + Partner Solutions Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 17505 Interstate Hwy. 35W, Northlake, TX 76262.

3. On information and belief, Defendant Honeywell International Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 855 S Mint St., Charlotte, NC 28202.

4. On information and belief, Defendant Vocollect, Inc. is a corporation organized under the laws of the State of Pennsylvania, having a principal place of business at 855 S Mint St., Charlotte, NC 28202.

5. On information and belief, Defendant Hand Held Products, Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 855 S. Mint St., Charlotte, NC 28202.

6. On information and belief, Defendant Intelligrated Headquarters LLC is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 855 S. Mint St., Charlotte, NC 28202.

7. On information and belief, Defendant Vocollect, Defendant Hand Held Products, and Defendant Intelligrated are owned by and/or affiliates of Defendant Honeywell.

## JURISDICTION AND VENUE

8. This is a declaratory judgment action brought under 28 U.S.C §§ 2201-02.

9. This Court has jurisdiction over the subject matter of this action pursuant to the following statutes:

2

a. 28 U.S.C. § 1331, this being a civil action arising under the laws of the United States;

b. 28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating commerce and protecting trade and commerce; and

c. 28 U.S.C. § 1338(a), this being a civil action arising under an Act of Congress relating to alleged patent rights.

10. This Court may declare the rights and other legal relations of the parties in this case under 28 U.S.C § 2201, and Rule 57, Fed. R. Civ. P., because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Plaintiff and Defendants.

11. This Court has personal jurisdiction over Defendants consistent with the principles underlying the U.S. Constitution and N.C. Gen. Stat. § 1-75.4.

12.  On information and belief, Defendants regularly and intentionally conducted business in this State and District and are subject to personal jurisdiction in this State and District by virtue of their contacts here.

13. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391.

## **FACTUAL BACKGROUND**

14. Plaintiff EPS – Ehrhardt + Partner Solutions Inc. is a global leader in the supply chain optimization software industry. EPS's software products, include, without limitation, warehouse management systems ("WMS"), warehouse control systems ("WCS"), workforce management ("WFM"), transportation management systems ("TMS") and voice solutions to optimize logistics processes.

15. On information and belief, Defendant Honeywell International Inc. ("Honeywell International") is a publicly traded corporation (NYSE: HON) generating over $38 billion in total annual revenue in 2024.

16. Honeywell International is the purported owner of over 27,000 patents covering a wide range of technologies, including aerospace, building automation technologies, industrial automation technologies, performance materials and technologies, safety and productivity solutions, and more.

17. On information and belief, Defendant Hand Held Products, Inc. ("Hand Held") is a wholly owned and controlled subsidiary of Honeywell International.

18. On information and belief, Hand Held, originally founded in North Carolina, was acquired by Honeywell International in 2007 for a purchase price of approximately $390 million. Hand Held purports to have designed, developed and offered a wide range of data collection and communication products for mobile, on-site, and transaction processing in retail, healthcare, utilities, transportation, and logistics.

19. On information and belief, Defendant Vocollect, Inc. ("Vocollect") is wholly owned subsidiary of Intermec Inc., a Delaware corporation, which is an indirect subsidiary of Hand Held Products, Inc. ("Hand Held").

20. On information and belief, Vocollect was acquired by Intermec Inc. in 2011. Intermec was thereafter acquired by Honeywell International in 2013. Vocollect is a self-described leader in voice technology solutions and offers its products for use in various industries, including distribution centers for order fulfillment.

21. On information and belief, Intelligrated Headquarters ("Intelligrated") is an indirect, wholly owned subsidiary of Honeywell International.

4

22. On information and belief, Intelligrated was acquired by Honeywell International in 2016 for a purchase price of approximately $1.5 billion. Intelligrated purports to have designed, manufactured, and offered a wide range of tools for warehouse automation systems including case and pallet conveyors, sortation systems, Alvey palletizers, robotic systems, order fulfillment systems and advance machine controls.

23. On January 18, 2022, Honeywell, through its in-house Deputy Intellectual Property Counsel, William Munnerlyn, wrote a letter accusing EPS of infringing U.S. Patent Nos. 7,609,669 (the "'669 Patent"); 8,700,405 (the "'405 Patent"); and 9,642,184 (the "'184 Patent"), by making, using, offering to sell, and selling the Lydia Voice Software solution. This letter demanded EPS to "immediately cease its infringing activity, desist from such infringing activity in the future, recall and destroy all infringing materials, and produce an accounting of all sales resulting from such infringing activity."  Honeywell further demanded "documents sufficient to show the Software's functionality for determining the performance of a system and determining any corrective actions to improve the performance or alternatively to establish that any such features are not present in the software…" Additionally, the letter also includes an invitation to engage in licensing discussions regarding the identified patents. A true and correct copy of the letter from Honeywell to EPS dated January 18, 2022 is attached as Exhibit A.

24. On February 16, 2022, EPS, through its outside counsel, sent a letter to Honeywell denying any allegations of infringement and respectfully declining Honeywell's offer to discuss any licensing opportunities with respect to the three patents identified in Honeywell's January 18, 2022 letter. A true and correct copy of the letter from EPS to Honeywell dated February 16, 2022 is attached as Exhibit B.

25. On May 2, 2023 (over a year later), Honeywell, through its in-house IP Litigation Counsel, Adam Doane, responded to EPS's letter dated February 16, 2022. Honeywell maintained its position that the Lydia Voice Software infringes the '669, '405, and '184 Patents and reiterated its offer to discuss a potential license. Furthermore, Honeywell accused EPS of infringing even more patents, namely U.S. Patent No. 7,885,419 (the "'419 Patent"), U.S. Patent No. 8,255,219 (the "'219 Patent") and European Patent No. 2359362, in addition to the previously identified '669, '405, and '184 Patents. A true and correct copy of the letter from Honeywell to EPS dated May 2, 2023 is attached as Exhibit C.

26. On September 8, 2023 (over 6 months later), Honeywell, through its outside litigation counsel at Alston & Bird, sent another letter reiterating its prior accusations of EPS's infringement of the '669, '405, '184, '419, '219 Patents, and EP Patent No. 2359362. Additionally, this new letter from Honeywell's outside counsel accused EPS of infringing three additional patents, namely U.S. Patent Nos. 9,361,882 (the "'882 Patent"), 8,550,354 (the "'354 Patent"), and 8,914,290 (the "'290 Patent), bringing the total number of asserted patents to nine. Honeywell's letter further demanded that EPS provide a response to its licensing offer by no later than September 29, 2023. A true and correct copy of the letter from Honeywell to EPS dated September 8, 2023 is attached as Exhibit D.

27. On September 27, 2023, EPS, through its outside counsel, promptly responded to Honeywell's September 8, 2023 letter by reiterating its denial of any and all allegations of infringement. A true and correct copy of the letter from EPS to Honeywell dated September 27, 2023 is attached as Exhibit E.

28. On December 5, 2023 (nearly three months later), Honeywell sent another letter to EPS with claim charts for the '882, '354, and '290 Patents and repeating its demand that EPS take a

license to the patents included in Honeywell's various letters. A true and correct copy of the letter from Honeywell to EPS dated December 5, 2023 is attached as Exhibit F.

29. On March 5, 2024, EPS, through its outside counsel, sent a fulsome response to Honeywell's December 5, 2023 letter, further outlining its position and denying all allegations made against it. A true and correct copy of the letter from EPS to Honeywell dated March 5, 2024 is attached as Exhibit G.

30. On June 23, 2024, Honeywell, through its VP & Chief IP Litigation Counsel, Jeremy Whitley, responded to EPS's March 5, 2024 letter, and concluded with accusations that EPS was infringing even more U.S. Patents than the nine previously mentioned by Honeywell, namely U.S. Patent Nos. 8,386,261 (the "'261 Patent"), 7,827,032 (the "'032 Patent"), 7,949,533 (the "'533 Patent") and 11,817,078 (the "078 Patent") (bringing the total number of asserted patents to thirteen). A true and correct copy of the letter from Honeywell to EPS dated June 23, 2024 is attached as Exhibit H.

31. On August 14, 2024, corporate representatives from EPS and Honeywell participated in an in-person business-to-business meeting in Charlotte, North Carolina, to discuss this matter.

32. After the parties' business-to-business meeting, Honeywell resumed its pattern of accusatory conduct toward EPS by sending additional correspondence containing threats of litigation unless EPS entered into a license agreement on terms unilaterally dictated by Honeywell.

33. For example, on October 28, 2024, Honeywell, through its in house counsel, wrote to counsel for EPS stating "the parties need to resolve the license issue soon and separately. Let me know if your client is interested in continuing the licensing discussions. If we don't hear back from you this week, we will assume not."

7

34. Similarly, in an email dated March 12, 2025, Honeywell reiterated its position, writing "Honeywell needs to move this forward so we will assume the answer is no [to Honeywell's unreasonable license demands] if we don't hear back from you this week."  Again, Honeywell repeated its practice of issuing unilateral ultimatums wherein silence or delay constituted an affirmative "no" from EPS.

35. In another email dated April 29, 2025, Honeywell wrote "[L]et me know by the 9th if EPS is interested in continuing the licensing discussions. If we don't have a yes by then, we will assume the answer is no. We've been at this long enough that those are the only acceptable answers to us."

36. By May 27, 2025, Honeywell was back to its threats of escalating this matter to litigation unless EPS agreed to Honeywell's unreasonable demands. One of Honeywell's last communications, on June 25, 2025, included a withdrawal of a previous license offer. Finally, on July 9, 2025, Honeywell made another veiled threat by claiming that it planned to "move this matter forward" in "one fashion or another" unless EPS agreed to pay an exorbitant license fee.

37. EPS has been consistent and clear that it was interested in resolving this matter but also that it does not have any legal liability to Honeywell; yet, Honeywell has persisted in its pattern of threats unless EPS capitulated to its license demands. Despite its years-long pattern of threats, however, Honeywell had not filed suit against EPS, thus leaving EPS is in the unenviable position of operating its business under a cloud of uncertainty wrongly created by Honeywell. EPS has tried in good faith to resolve this matter without the involvement of the courts, but enough is enough. EPS is entitled to a declaratory judgment resolving this matter once and for all.

38. Honeywell's unsavory conduct has continued. Honeywell has filed a complaint for patent infringement against EPS in the EDTX, case captioned *Honeywell International Inc. et al v. EPS – Ehrhardt + Partner Solutions, Inc.*, 2:25-cv-918 ("EDTX Complaint"), in which Honeywell

specifically referenced even more patents that it accuses EPS of infringing. A true and correct copy of the EDTX Complaint is attached as Exhibit I.

39. In addition to the patents referenced above, Honeywell has expressly accused EPS of infringing six (6) additional patents, namely U.S. Patent Nos. 9,152,940 (the "'940 Patent"); 10,049,504 (the "'504 Patent"); 10,769,863 (the "'863 Patent"); 11,158,336 (the "'336 Patent"); 12,057,139 (the "'139 Patent"); 12,400,678 ("'678 Patent") (bringing the total number of U.S. patents EPS allegedly infringes to eighteen (18) patents).

40. The patents specifically referenced by Honeywell in the EDTX Complaint are part and parcel of the same controversy surrounding patents asserted by Honeywell for which EPS sought declaratory relief in this Court long before Honeywell filed the EDTX Complaint.

41. At present, the United States patents asserted by Honeywell comprise U.S. Patent Nos. 8,700,405; 9,642,184; 8,255,219; 7,885,419; 7,609,669; 9,361,882; 8,914,290; 8,550,354; 7,827,032; 7,949,533; 11,817,078; 8,386,261; 9,152,940; 10,049,504; 10,769,863; 11,158,336; 12,057,139; and 12,400,678 (collectively, the "Asserted Patents"). True and correct copies of the Asserted Patents are attached as Exhibit J.

42. The Asserted Patents relate to the same overall dispute between the parties, which involves a common core of operative facts and parties with an identity of interest.

43. The Asserted Patents are part of the same conduct, transaction and occurrence set out—or attempted to be set out—in this complaint, namely the same patent dispute between Honeywell and EPS.

44. Determining whether EPS infringes the Asserted Patents will involve closely related questions and subject matter such that their core issues substantially overlap.

9

45. The Asserted Patents purport to be directed to text-to-speech, speech-recognition, and warehouse management technology.

46. The Asserted Patents overlap with each other in many ways, including with common inventors, common cited prior art, and common fields of technology, such as for example:

a. The '669 Patent claims methods that involve "selected operators performing logistical operations at a warehouse," and a wireless network that purports to facilitate execution of a "logistical application within a warehouse environment." *See* '669 Patent, Claims 1 and 33. The specification further discloses processes and computer systems for inventory management systems in a warehouse. *See e.g., id.*, 1:66-2:4, 3:49-56, 7:12-14, 8:46-54, 8:65-9:1, 9:22-25. The '669 Patent also discusses the logistics of coordinating personnel within a warehouse. *See e.g., id.*, 8:65-9:2, 9:60-61, 10:4-7.

b. The '032 Patent discusses inventory management and warehouse operations as background art to its invention. *See e.g.,* '032 Patent, 1:47-51. The '032 Patent further incorporates by reference publications that relate to warehouse management. *See e.g., id.*, 5:61-64.

c. The '533 Patent similarly discusses warehouse inventory management related to its invention. *See* '533 Patent, 1:45-58, 5:50-55. The '533 Patent also incorporates by reference publications that relate to warehouse management. *See e.g., id.*, 5:66-6:2.

d. The '219 Patent also discusses warehouse inventory management as it relates to its invention. *See* '219 Patent, 1:52-65, 5:48-53. It further incorporates by reference publications that relate to warehouse management. *See e.g., id.*, 5:64-67.

10

e.  The '419 Patent purports to include background technology and embodiments for a product management system that can be used in a manufacturing or warehouse facility. *See* '419 Patent, 1:20-27, 2:9-14, 3:3-14, 4:42-46, 6:65-7:2.

f.  The application for the '354 Patent was analyzed by the U.S. Patent and Trademark Office under classification G06K7/10, which includes technology associated with warehouse management. Further, the '354 Patent purports to disclose embodiments that include an indicia scanner that is able to be used in a store or warehouse. *See* '354 Patent, 2:49-62.

g.  The '405 Patent discusses a communication device and method that purports to have applications in managing and operating an industrial plant. *See e.g.,* '405 Patent, 2:34-51, 3:13-16, 3:41-47.

h.  The '184 Patent similarly discusses a communication device and method that purports to have applications in managing and operating an industrial plant. *See e.g.,* '184 Patent, 2:41-58, 3:23-26, 3:54-60.

i.  The '290 Patent discusses using text-to-speech-based devices for inventory management and warehouse operations. *See e.g.,* '290 Patent, 1:44-53, 2:13-23, 2:35-37, 4:59-5:11, 5:23-32, 10:34-46.

j.  The '078 Patent also discusses using speech-based devices for inventory management and warehouse operations. *See e.g.,* '078 Patent 1:60-2:2, 2:29-39, 5:31-34, 5:46-55, 10:65-11:4.

k.  The '882 Patent purports to discuss a system for supervising an operator in a speech-based task management system with embodiments where the system is used in

inventory management and warehouse operations. *See e.g.*, '882 Patent, 1:33-35, 1:44-54, 2:29-35, 4:17-21, 5:2-4, 7:50-52.

l.  The '504 and '863 Patents discuss technology that relates to three-dimensional models of facilities, which Honeywell has asserted relates to EPS's warehouse control systems. Both the '504 Patent and the '863 Patent also list Tom Plocher as an inventor, and he is also listed as an inventor for the '184 Patent and the '405 Patent.

m.  The '940 Patent discusses warehouse control software and loading products from a distribution center. *See e.g.*, '940 Patent, Abstract, 3:1-21, 3:47-60, 5:12-20, 6:17-37. The '940 Patent also claims embodiments of its software and devices that incorporate speech-directed technology. *See e.g.*, *id.*, 12:35-40, Claims 2-3. The '940 Patent also cites to US5501571A as prior art, similar to the '419 Patent.

n.  The '336 Patent discusses applications for distinguishing user speech from background speech in warehouse environments. *See e.g.*, '336 Patent, 1:44-47, 2:30-44, 19:5-21:22. This patent also purports to claim methods that include speech recognition technology. *See e.g.*, *id.*, Claim 1. The specification in the '336 Patent similarly discusses speech recognition technology. *See e.g.*, *id.*, 1:18-22. In particular, the application for the '336 Patent was analyzed by the U.S. Patent and Trademark Office under classifications directed to speech recognition and voice technology. Further, the '336 Patent incorporates by reference the '290 Patent and the '354 Patent. Honeywell has asserted that EPS's Lydia Voice software solution infringes the '336 Patent.

o.  The '139 Patent similarly discusses applications for distinguishing user speech from background speech in warehouse environments. *See e.g.*, '139 Patent, 1:52-54, 2:38-52, 19:13-21:35. The '139 Patent purports to claim methods of speech recognition in

12

warehouse picking operations. *See e.g.*, *id.*, Claims 1, 11. The '139 Patent further purports to claim methods that include speech recognition technology. *See e.g.*, *id.*, Claim 1. The specification in the '139 Patent similarly discusses speech recognition technology. *See e.g.*, *id.*, 1:26-30. In addition, the '139 Patent's application was analyzed by the U.S. Patent and Trademark Office under classifications directed to speech recognition and voice technology. Further, the '139 Patent incorporates the '290 Patent and the '354 Patent by reference. It further cites to the '669 Patent, the '290 Patent, the '354 Patent, the '419 Patent, the '533 Patent, and the '219 Patent as prior art references. Finally, the '139 Patent cites to hundreds of the same prior art references that are cited as prior art in the '032 Patent, the '419 Patent, the '533 Patent, the '219 Patent, the '290 Patent, the '882 Patent, the '184 Patent, and the '078 Patent. Honeywell has asserted that EPS's Lydia Voice software solution infringes the '139 Patent.

p.  The '678 Patent also discloses applications for distinguishing user speech from background speech in warehouse environments. *See e.g.*, '678 Patent, 1:55-58, 2:41-55, 19:16-21:35. The '678 Patent also purports to claim methods of speech recognition in warehouse picking operations. *See e.g.*, *id.*, Claims 1, 13. The '678 Patent additionally purports to claim methods that include speech recognition technology. *See e.g.*, *id.*, Claim 1. The specification in the '678 Patent similarly discusses speech recognition technology. *See e.g.*, *id.*, 1:30-34. Further, the U.S. Patent and Trademark Office analyzed the application for the '678 Patent under classifications directed to speech recognition and voice technology. Further, the '678 Patent incorporates the '290 Patent and the '354 Patent by reference. It further cites to the '669 Patent, the '290 Patent, the '354 Patent, the '419 Patent, the '533 Patent, and the '219 Patent as prior

13

art references. Finally, the '678 Patent cites to hundreds of the same prior art references that are cited as prior art in the '032 Patent, the '419 Patent, the '533 Patent, the '219 Patent, the '290 Patent, the '882 Patent, the '184 Patent, and the '078 Patent. Honeywell has asserted that EPS's Lydia Voice software solution infringes the '678 Patent.

q. The '261 Patent lists Michael Laughery as an inventor, and he is also listed as an inventor for the '219 Patent and the '533 Patent. The '261 Patent also lists James Randall Logan as an inventor, and he is further an inventor for the '419 Patent. The '261 Patent also purports to include discussion of speech-recognition and text-to-speech technology. *See e.g.*, '261 Patent, 1:11-15, 1:19-25, 1:47-50, 4:51-55, 5:10-20, 5:38-50, 6:41-48, Claim 1. Honeywell has asserted that EPS's Lydia Voice software solution infringes the '261 Patent. Honeywell further alleges that the '261 Patent encompasses warehouse management systems.

47. Honeywell accused EPS's Lydia Voice software solution of patent infringement prior to EPS filing the present complaint for declaratory relief. In the EDTX Complaint, Honeywell again accused EPS's Lydia Voice software solution of patent infringement.

48. That Honeywell continues to add more and more patents to its assertions against EPS is no surprise. EPS brought this claim for declaratory relief for precisely this reason. As EPS stated in its original complaint and repeats here in this amended complaint, EPS is entitled to a declaratory judgment from this Court resolving this matter once and for all.

## COUNT I
## DECLARATORY JUDGMENT

49. The allegations in the preceding paragraphs are incorporated herein by reference.

50. Defendants have threatened Plaintiff's business by accusing Plaintiff of unlawful actions, including infringement of an ever-growing list of patents.

51. Plaintiff has denied any liability for all allegations made by Defendants.

52. Despite Plaintiff's denials, Defendants have continued to threaten Plaintiff and its business with accusations concerning their purported patent rights.

53. Plaintiff is legally permitted to make, import, use, sell, and offer to sell its products and otherwise conduct its respective business activities without permission, involvement, or interference from Defendants.

54. There is an actual and substantial controversy between Plaintiff and Defendants of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court.

55. Plaintiff is entitled to a judgment declaring that it has not violated any purported rights of Defendants under federal, state, or common law and is not liable to Defendant for any claims, including any claim for patent infringement concerning the Asserted Patents.

## PRAYER FOR RELIEF

In view of the foregoing, EPS asks that this Court grant the following relief:

A.  Declaring that Plaintiff has not violated any purported rights of Defendants, including any provisions of 35 U.S.C. § 101 *et seq.* or any other asserted federal, state, or common law laws;

B.  Finding this case exceptional in favor of Plaintiff pursuant to 35 U.S.C. § 285, and awarding Plaintiff its costs and reasonable attorney fees; and

C.  Granting Plaintiff any such further legal and equitable relief as the Court may deem just and proper.

## JURY DEMAND

EPS hereby demands a trial by jury of all issues in this action so triable.

15

Respectfully submitted,

Dated: October 9, 2025

s/ *J. Mark Wilson*
Kathryn G. Cole
N.C. State Bar No. 39106
J. Mark Wilson
N.C. State Bar No. 25763
Jacob Z. Zambrzycki
N.C. State Bar No. 56223
Rebecca Alba Rathmell
N.C. Bar No. 61881
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: katecole@mvalaw.com
Email: markwilson@mvalaw.com
Email: jacobzambrzycki@mvalaw.com
Email: rebeccarathmell@mvalaw.com

*Attorneys for Plaintiff*
*EPS – Ehrhardt + Partner Solutions Inc.*

16